Wesley C. SEWARD, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. J–80–1370.

United States District Court, D. Maryland.

May 27, 1981.

---

Wesley C. Seward in pro. per.

Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., Gregory S. Hrebiniak, U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

SHIRLEY B. JONES, District Judge.

Wesley C. Seward, proceeding *pro se*, filed this action on May 29, 1980, for recovery of taxes paid under 26 U.S.C. § 1401, which provides that self-employed persons pay taxes for Social Security benefits. Plaintiff, who has an honorary Doctor of Divinity degree from the Universal Life Church, in 1976 sought an exemption from payment of self-employment taxes under 26 U.S.C. § 1402(e), but it was denied in 1979. The statute provides an exemption from self-employment taxes on income from religious services performed by a minister who is conscientiously opposed to, or for religious reasons is opposed to, accepting public benefits for death, old age, disability, retirement or medical expenses (Social Security). Plaintiff's complaint seeks, on equal protection grounds, "the same treatment as the other ministers who presently are exempt from Social Security on religious grounds."

The Government filed a motion to dismiss, on the ground that plaintiff was obligated to pay the tax and claim a refund before filing suit. Mr. Seward claimed a refund on August 21, 1980.[1] Whether the failure to claim a refund before filing suit deprives this Court of jurisdiction, *e. g., Old Dominion Box Co. v. United States*, 477 F.2d 340, 346 (4th Cir. 1973), regardless of the subsequent claim, need not be decided, since it is clear that the Government must prevail on the motion for summary judgment.

The Government filed a motion for summary judgment on April 9, 1981, to which plaintiff has responded. The Government

---

1. Mr. Seward paid $5800, as taxes for 1976 through 1979, on May 23, 1980, before this action was filed. The Government asserted that the specific taxes were not paid, in that the $5800 sent to the Internal Revenue Service was not creditied to these taxes. (See letter of January 12, 1981, to this Court, filed with this Memorandum and Order.) This problem has apparently now been corrected.

contends that plaintiff does not fall within the exemption of 26 U.S.C. § 1402(e) because the exemption applies only to income from services as a minister. It is the Government's position that the plaintiff's income as a self-employed individual derives solely from his dental practice and not from any services as a minister. It relies in part on Treasury Regulations defining when a minister's services are considered to be in the exercise of his ministry. Plaintiff challenges the relevance of the regulations to his situation and, apparently, the constitutionality of the regulations or their application to him. He states:

> Defendant seems determined to presume to mandate how Plaintiff is to relate to his church and to his God. Plaintiff is just as determined that the state not dictate a citizen's religious beliefs or activities.

The facts in this case are largely undisputed. Plaintiff is a practicing dentist whose office is located at 8133 Loch Raven Boulevard, Baltimore, Maryland. He has been practicing at that location since 1954. Until 1976 he paid self-employment social security taxes on the income from his practice.[2] He became a minister of the Universal Life Church in 1976,[3] and in that year filed a claim of exemption as a minister under 26 U.S.C. § 1402(e).[4]

Section 1402(e)(1) provides:

> Any individual who is (A) a duly ordained, commissioned or licensed minister of a church or a member of a religious order ... or (B) a Christian Science prac-

titioner, upon filing an application ... together with a statement that either he is conscientiously opposed to, or because of religious principles he is opposed to, the acceptance (with respect to services performed by him as such minister, member or practitioner) of any public insurance which makes payments in the event of death, disability, old age, or retirement or makes payment toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act) shall receive an exemption from the tax imposed by this chapter *with respect to services performed by him as such minister, member, or practitioner.*

26 U.S.C. § 1402(e)(1). (Emphasis supplied). The Treasury Department has promulgated regulations under the statute defining "services performed by him as such minister, member or practitioner." The Government contends that plaintiff's self-employment income is received as a dentist, not a minister. The plaintiff contends that his ministry is intertwined with his dental practice. He states in his answer to the Government's request for admissions:

> For reasons which Plaintiff is prepared to elaborate on and document, *one important aspect of his practice of dentistry* is conducted in such a manner that he considers it his ministry. Plaintiff feels that *this aspect of his practice* is unique and sets it apart from all other dental practices in the state. Plaintiff feels that his services as a dentist and his ministry are not mutually exclusive.

---

**2.** Plaintiff asserts that he had earlier made a commitment not to accept Social Security benefits for religious reasons but did not apply for an exemption because of concern for his wife and children.

**3.** The Government contests plaintiff's status as an "ordained" minister, on the basis that the Universal Life Church distinguishes between its honorary divinity degrees and ministerial credentials. It assumes, however, that plaintiff is a duly ordained minister.

It is unclear that the Universal Life Church draws the distinction the Government notes. In *Universal Life Church v. United States*, 372 F.Supp. 770 (E.D.Cal.1974), a case concerning the tax-exempt status of Universal Life Church,

Inc. in Modesto, California, the Court seemed to draw such a distinction, *see id*, at 772–73, but testimony of the church's founder was that the church developed the honorary degrees because its policy was to issue ministerial credentials upon request, *id.* at 772. In any event, this Court will assume that plaintiff is an ordained minister.

**4.** Plaintiff received his degree in November 1976 and filed his request for an exemption in February 1976. It appears that the exemption was requested before the degree was received. Since the exemption was not denied until 1979, the IRS apparently considered plaintiff's affiliation with the Universal Life Church.

(Emphasis supplied). Plaintiff's response to the Government's motion for summary judgment does not elaborate on the aspect of his dental practice that sets it apart from others.

■ Plaintiff may, reading his complaint and other papers liberally, be asserting a First Amendment claim of interference with his freedom of religion or a claim of violation of the Establishment Clause by preferring one religion over another. To the extent that these claims are directed at the statute, they lack merit. Nothing in the language of 26 U.S.C. § 1402(e) excludes qualifying ministers of the Universal Life Church, and to the extent plaintiff's equal protection claim is directed at the statute, it too lacks merit. The constitutionality of 26 U.S.C. § 1402(e) has been upheld by other courts in challenges based on freedom of religion and the Establishment Clause, *Hanson v. Commissioner*, 79–2 U.S.T.C. ¶ 9351 (10th Cir. 1979) (dictum); *cf., e. g., Palmer v. Commissioner*, 52 T.C. 310 (1969); *Varga v. United States*, 467 F.Supp. 1113, 1117–19 (D.Md.1979), *aff'd without opinion*, 618 F.2d 106 (4th Cir. 1980) (constitutionality of 26 U.S.C. § 1402(g)); and in equal protection challenges that it exempts some groups and not others, *Henson v. Commissioner*, 66 T.C. 835 (1975) (§§ 1402(e) and (g)); *Reed v. Commissioner*, 39 T.C.M. (CCH) 455 (1979) (§§ 1402(e) and (g)).

■ Plaintiff's primary claim is directed at the IRS regulations and rulings issued under the statute or their application to him. These regulations are reasonably designed to specify what services qualify as services performed as a minister. They include the conduct of worship and ministration of sacerdotal functions, as defined by the religious body, 26 C.F.R. § 1.1402(c)–5(b)(2)(i); services in the control, conduct, or maintenance of a religious organization, *id.* § 1.1402(c)–5(b)(ii); and certain services for non-religious organizations assigned by a church, *id.* § 1.1402(c)–5(b)(v). None of these regulations would preclude a qualify-ing Universal Life Church minister from obtaining an exemption for ministerial service income.

Although the Universal Life Church apparently has little in the way of religious dogma, ministerial functions such as conducting worship services or performing baptisms and marriage ceremonies are performed by its ministers. *See Universal Life Church v. United States*, 372 F.Supp. 770, 772 (E.D.Cal.1974) (summarizing testimony of Rev. Hensley, founder). Thus, an equal protection argument [5] that the regulations discriminate against this religious group cannot be successful.

■ Finally, plaintiff claims that the IRS' application of the regulations to him denies him equal protection, as opposed to other ministers. The exemption of 26 U.S.C. § 1402(e) covers only self-employment income derived from ministerial functions with respect to any minister. Plaintiff has been engaged in the practice of dentistry before and after becoming a minister of the Universal Life Church in 1976. He apparently concedes that his income derives from this practice. He refers to a unique feature of the practice that makes it a part of his ministry, but has not stated what this aspect is. The uncontroverted facts in this case establish no basis for an equal protection claim or for a statutory claim that the IRS has erred in denying the § 1402(e) exemption from self-employment taxes for social security benefits. Summary judgment will be granted in favor of the defendant.

**5.** Plaintiff invokes the Fourteenth Amendment, which applies only to the States. The due process clause of the Fifth Amendment affords similar protection against the actions of the federal government, *e. g., Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1953).