J. H. SCHROEDER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MARLYS E. SCHROEDER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schroeder v. Commissioner
Docket Nos. 33415-85; 33508-85
United States Tax Court
T.C. Memo 1986-583; 1986 Tax Ct. Memo LEXIS 23; 52 T.C.M. (CCH) 1163; T.C.M. (RIA) 86583; December 15, 1986. J. H. Schroeder, pro se. Cynthia J. Olson, for the respondent. VANDERVORT
MEMORANDUM FINDINGS OF FACT AND OPINION VANDERVORT, Special Trial Judge: This case was assigned pursuant to the provisions of section 7456(d)(3) of the Code (redesignated section 7443A(b)(3) by section 1556 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat.    ) and Rules 180, 181 and 182. [1]
In Notices of Deficiency dated June 5, 1985, respondent determined deficiencies and additions to tax in petitioners' 1981 Federal income tax as follows: Docket No. 33415-85: Marlys E. Schroeder
Additions to Tax
Year
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)(1)
Sec. 6654
1981
$6,821.00
$1,705.25
$341.05
$523.93
*27 Docket No. 33508-85: J. H. Schroeder
Additions to Tax
Year
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)(1)
Sec. 6654
1981
$4,697.00
$1,174.25
$234.85
$360.66
Respondent also determined that each petitioner is liable for the addition to tax pursuant to section 6653(a)(2) in an amount equal to 50% percent of the interest due on the entire deficiency determined against each petitioner. After concessions, the remaining issues for decision, all of which involve only petitioner J. H. Schroeder (hereinafter "petitioner"), [2] are: (1) whether the statute of limitations for 1981 expired prior to the issuance of respondent's deficiency notice to petitioner; (2) whether petitioner is entitled to joint filing status; (3) whether petitioner received income for the taxable year 1981 in the amount determined by respondent; (4) whether petitioner is entitled to deductions and credits for the taxable year 1981 in excess of those allowed by respondent; (5) whether petitioner is exempt from self-employment tax pursuant to section 1402(e)(1); (6) whether petitioner is liable for additions to tax as determined by respondent; and, (7) whether petitioner is entitled *28 to elect income averaging and to claim a net operating loss carryover and an investment tax credit carryover for the taxable year 1981. [3]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated by this reference. At all times relevant, petitioners resided in Littleton, Colorado. During 1981, petitioner, a cash-basis taxpayer, earned $78.00 from the performance of ministerial services. Petitioner engaged in several other activities during that year, including obtaining an Amway distributorship and conducting business activities through both the Loup Valley Cookware Trust (Cookware Trust) and the J. H. Schroeder Family Trust (Family Trust). He did not, however, maintain books and records of these business activities and did not make any estimated tax payments for 1981. On December 19, 1980, Cookware *29 Trust issued check number 687, payable to Ackles Oil in the amount of $10.00. Family Trust issued check number 903 on December 30, 1980, payable to Ord Paint & Glass in the amount of $24.18. Deductions were claimed for these expenses in 1981, the year the checks were cancelled. Other expenditures were charged to the Master Charge account of J. H. Schroeder during 1980. No purchases were made on the account during 1981. Throughout 1981, however, payments were made to Master Charge against both accrued finance charges and the outstanding balance representing items purchased during 1980. With respect to amounts representing 1980 purchases, petitioner claimed section 162 and section 212 deductions in 1981 upon payment to Master Charge. On June 22, 1982 respondent received petitioner's 1981 Form 1040. The form was dated April 27, 1982 and signed, but the language, "Under penalty of perjury", provided in the space for the taxpayers' signatures, was obliterated. Separate Forms 1041 were filed for Cookware Trust and Family Trust for their taxable years, both ending February 28, 1982. The perjury declarations on these documents were also obliterated. All income and expenses of the *30 trusts were attributable to and reportable by petitioner for the taxable year 1981. Petitioner received a notice of deficiency dated June 5, 1985 for the taxable year 1981. In the notice of deficiency, respondent determined petitioner's 1981 income by combining the income reported on his Form 1040 for the taxable year ending December 31, 1981 with that reported on the trusts' Forms 1041 for the fiscal years ending February 28, 1982. Adjustments were made to account for various nontaxable items and transfers between entities. Further, various deductions and credits were disallowed. OPINION Statute of Limitations
In general, the amount of any tax must be assessed within the later of three years after the date a return is either filed or due. Section 6501(a). In the case of failure to file a return, the tax may be assessed at any time. Section 6501(c)(3). Section 6065 [4] requires that returns be verified in writing under penalty of perjury. See also section 1.6065-(a), Income Tax Regs. The failure to sign forms in accordance with section 6065 is the equivalent of the failure to file returns required by other sections of the Code. [5]United States v. Moore,627 F.2d 830, 834 (7th Cir. 1980); *31 Beard v. Commissioner,82 T.C. 766, 777 (1984), affd. 793 F.2d 139 (6th Cir. 1986); Cupp v. Commissioner,65 T.C. 68, 78 (1975), affd. without published opinion 559 F.2d 1207 (3d Cir. 1971). Petitioner intentionally deleted the declaration that the returns were filed under penalty of perjury on all Forms 1041 and the Form 1040 pertaining to the 1981 taxable year. By crossing out this language, petitioner refused to certify that the entries on the forms were correct. Because petitioner failed to file a valid return under section 6065, respondent may assess the tax due and owing for 1981 at any time. Section 6501(c)(3). *32 Therefore, the notice of deficiency dated June 5, 1985 is timely, and the statute of limitations does not bar the assertion of a deficiency. Joint Filing Status
Respondent computed petitioner's 1981 tax by applying the rates applicable to married persons filing separately. Petitioner maintains that he is entitled to use the tax rates applicable to married individuals filing joint returns. Section 1(a) provides that the rates for married persons filing jointly are applicable to "every married individual * * * who makes a single return jointly with his spouse." Thus, a joint return must be filed in order to validly elect joint return treatment. Thompson v. Commissioner,78 T.C. 558, 561 (1982). See also Jenny v. Commissioner,T.C. Memo. 1983-1. Cf. Phillips v. Commissioner,86 T.C. 433, 441 n. 7 (1986). Since we have found that petitioner did not file a valid income tax return for 1981, he is not entitled to elect joint filing status, and his taxable income must be calculated in accordance with the rates applicable to married persons filing separately. 1981 Taxable Income
The Commissioner's deficiency determination *33 is presumptively correct. Welch v. Helvering,290 U.S. 111, 115 (1933). In order to overcome this presumption, petitioner must offer evidence showing the determination to be erroneous. Gersten v. Commissioner,267 F.2d 195, 199 (9th Cir. 1959), affg. in part 28 T.C. 756 (1957). Petitioner bears the burden of proof. Rule 142(a). We find that petitioner failed to carry his burden. Where a taxpayer does not keep records from which actual income can be determined, the Commissioner may use any reasonable method to reconstruct a taxpayer's income. Section 446(b); Holland v. United States,348 U.S. 121, 13-132 (1954); Davis v. Commissioner,239 F.2d 187, 189 (7th Cir. 1956); Harperv.Commissioner,54 T.C. 1121 (1970). The Commissioner is at "liberty to resort to the best procedure available under the circumstances in making his determinations." Harbin v. Commissioner,40 T.C. 373, 377 (1963). See also Giddio v. Commissioner,54 T.C. 1530, 1532 (1970). Although petitioner argued at trial in favor of the use of the bank deposits method of reconstructing *34 income, he was unable to show that an accurate estimate of the 1981 income could be produced by using such method. Petitioner's testimony was vague and uncorroborated on this issue. Thus, without adequate records of his income-producing activities for 1981, petitioner was unable to show that respondent's method of estimating income was erroneous. Therefore, we find that respondent properly used the amounts reflected on petitioner's various tax forms as the best available evidence of the trusts' and, therefore, petitioner's 1981 income. [6]
Deductions and Credits
At issue is whether petitioner is entitled to various deductions and credits claimed in 1981. First, petitioner claims that he is entitled to deductions for a Cookware Trust check to Ackles Oil (check number 687) and a Family Trust check to Ord Paint and Glass (check number 903) because they were cashed in 1981. We disagree. Under the cash basis method of accounting, allowable expenses are deductible only in the year of payment. Section 1.461-1(a)(1), Income Tax Regs. Generally, *35 the delivery of a check will constitute payment for Federal income tax purposes. Commissioner v. Bradley,56 F.2d 728 (6th Cir. 1932); Estate of Spiegel v. Commissioner,12 T.C. 524 (1949). If a check is dated in one year but cashed in the next, the deduction will not be allowed in the later year, absent proof that delivery was actually made in the later year. [7]
Petitioner is a cash-basis taxpayer. Both of petitioner's checks were dated and issued in 1980. Since there is no evidence that delivery of either check was delayed until 1981, the amounts are not properly deductible in 1981. Second, petitioner deducted as business expenses numerous payments to Master Charge for purchases made in 1980. It is well settled that expenses paid by a cash basis taxpayer with borrowed funds are deductible in the year of payment and that the deduction cannot be postponed until the year the loan is repaid. Granan v. Commissioner,55 T.C. 753 (1971). *36 The use of a credit card is equivalent to the use of borrowed funds in that the payee receives payment and the cardholder immediately becomes indebted to a third party (the issuer of the card) for the amount of the expense. Consequently, the use of a credit card for an otherwise deductible expense qualifies as a payment in the year the credit card charge is made, regardless of when the issuer is repaid. The Master Charge statements in evidence in this case show that no purchases were made in 1981 and that all payments in that year were made solely to repay the issuer for purchases made in 1980 (together with accumulated finance charges thereon). Therefore, such payments for 1980 purchases (as opposed to payments for finance charges) were not properly deductible in 1981. Third, petitioner alleges that he is entitled to several itemized deductions, business and rental deductions, and credits, including those for travel expenses, depreciation, political contributions, expenses incurred in maintaining an office in the home, expenses for repairs to rental units, and fees paid to operate an Amway distributorship. [8] In addition to his lack of credibility, petitioner provided no witnesses *37 or other evidence for the purpose of either establishing his entitlement to the claimed deductions and credits, or substantiating the amounts thereof. Petitioner did not meet his burden of proof. Although this Court has often utilized the Cohan rule, it is not automatic. The taxpayer must bring himself within the scope of Cohan in order to benefit from its application. A deduction will be allowed based on an approximation only if the Court is convinced that at least the estimated amount was in fact incurred for the stated purpose. Williams v. United States,245 F.2d 559, 560 (5th Cir. 1957); Cohan v. Commissioner,39 F.2d 540, 544 (2d Cir. 1930). *38 Petitioner did not establish a basis upon which to permit the Court to make an approximation under the Cohan rule. Any attempt to apply the rule in this case would amount to sheer "unguided largesse" on the part of the Court. Williams v. United States,supra.
Self-Employment Tax
Respondent and petitioner agree that the income from petitioner's ministerial activities is exempt, but disagree as to whether income from the sale of cookware is, also, exempt. Ministerial income is exempt from self-employment tax pursuant to section 1402(e)(1). Section 1402(e)(1) provides that the exemption from self-employment tax applies to a minister only "with respect to services performed by him as such minister," and has no application to services which are not performed in "the exercise of his ministry." [9] Section 1402(e)(1); section 1.1402(c)-5, Income tax Regs.; Seward v. United States,515 F. Supp. 505, 507 (D. Md. 1981); Toavs v. Commissioner,67 T.C. 897 (1977); Henson v. Commissioner, 66 T.C. at 839. *39 During 1981, however, Cookware Trust received income from the sale of cookware. Petitioner stipulated that such trust income was attributable to him for Federal income tax purposes, but argues that it is not subject to self-employment tax because all his activities necessarily relate to the ministry and because the imposition of the tax infringes upon his First Amendment rights. [10]
We find it commendable that petitioner brings the commitment of his faith to all his endeavors, but this proposition is hardly the basis upon which to equate the sale of cookware with the conduct of religious worship. Colbert v. Commissioner,61 T.C. 449, 456 (1974). Because petitioner did not meet his burden of proving either that his relationship with Cookware Trust was in the exercise of his ministry or that the trust is a religious organization, petitioner *40 is not entitled to exclude the income of Cookware Trust from self-employment tax under section 1402. Rule 142(a); Welch v. Helvering,supra.
Additions To Tax
The next issue is whether petitioner is liable for additions to tax under sections 6651(a)(1), 6653(a) and 6654(a). Petitioner bears the burden of proving that he is not liable. Bixby v. Commissioner,58 T.C. 757, 791 (1972); Enoch v. Commissioner,57 T.C. 781, 802 (1972). Section 6651(a)(1) imposes an addition to tax which is not to exceed 25 percent in the aggregate in the case of failure to file a return, unless it is shown that such failure is both due to reasonable cause and not due to willful neglect. On the entire record, we have found that petitioner did not file a valid income tax return for the 1981 taxable year. Since petitioner presented no evidence on this matter, he failed to meet his burden of proof. Therefore, the section 6651(a)(1) addition to tax is proper. See Cupp v. Commissioner,65 T.C. at 81; Jarvis v. Commissioner,78 T.C. 646 (1982). Section 6653(a) provides for additions to tax for negligence or intentional *41 disregard of rules and regulations. Petitioner failed to introduce any evidence and, thus, failed to meet his burden of showing that he was not negligent and did not intentionally disregard the Internal Revenue Code rules and regulations. Accordingly, we sustain the additions to tax under section 6653(a). Respondent determined an addition to tax under section 6654 for underpayment of estimated tax. This addition is mandatory where there exists either a failure to pay or an underpayment of, estimated tax. As a result, no inquiry is made as to reasonable cause or lack of willful neglect. Grosshandler v. Commissioner,75 T.C. 1, 20-21 (1980); Bagur v. Commissioner,66 T.C. 817, 824 (1976). Petitioner made no estimated tax payments for the 1981 taxable year. Therefore, we sustain respondent's determination. Carryovers And Income Averaging
Finally, petitioner asserts that he is entitled to elect income averaging and to claim amounts for both a net operating loss carryover and an investment tax credit carryover for 1981. Petitioner presented no evidence on these issues, other than his own confused, unsupported, and self-serving testimony. Rule *42 142(a). Upon consideration of the entire record, we hold that petitioner has failed to carry his burden of showing respondent's determinations of a deficiency and additions to tax to be in error. For the reasons set forth herein, we sustain respondent's determinations, taking into account the concessions made by the parties. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect during the year in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The parties stipulated that petitioner Marlys E. Schroeder "received no income nor claims any deductions for the 1981 tax year." ↩
3. The same issues involving petitioners' 1978, 1979 and 1980 taxable years were addressed in a previous opinion of this Court, Schroeder v. Commissioner,T.C. Memo. 1986-467↩.
4. SEC. 6065. VERIFICATION OF RETURNS. Except as otherwise provided by the Secretary, any return, declaration, statement or other document required to be made under any provision of the internal revenue laws or regulations shall contain or be verified by a written declaration that it is made under the penalties of perjury. ↩
5. See sections 6001, 6011(a) and 6061. See also Schroeder v. Commissioner,T.C. Memo. 1986-467; Schroeder v. Commissioner,T.C. Memo. 1986-337↩.
6. See Farkas v. Commissioner,T.C. Memo. 1986-420; Farmakis v. Commissioner,T.C. Memo. 1986-419↩.
7. See Odom v. Commissioner,T.C. Memo. 1982-531; Marcello v. Commissioner,T.C. Memo. 1964-301; Green v. Commissioner,T.C. Memo. 1964-113↩.
8. As to the Amway distributorship fee, petitioner failed to show that he conducted his Amway affairs in connection with a trade or business or an activity engaged in for profit. Petitioner made no sales of Amway products and had no income from his Amway operations during 1981. He failed to possess the requisite profit objective, since he admittedly became a distributor solely for the purpose of being able to purchase items at discount prices by virtue of his status as a "dealer." See section 183.↩
9. Section 1.1402(c)-5(b)(2) provides that: service performed by a minister in the exercise of his ministry includes the ministration of sacerdotal functions and the conduct of religious worship, and the control, conduct, and maintenance of religious organizations * * * under the authority of a religious body constituting a church or church denomination. * * * (i) Whether service performed by a minister constitutes the conduct of religious worship or the ministration of sacerdotal functions depends on the tenets and practices of the particular religious body constituting his church or church denomination. (ii) Service performed by a minister in the control, conduct, and maintenance of a religious organization relates to directing, managing, or promoting the activities of such organization. Any religious organization is deemed to be under the authority of a religious body constituting a church or a church denomination if it is organized and dedicated to carrying out the tenents and principles of a faith in accordance with either the requirements or sanctions governing the creation of institutions of the faith. * * *↩
10. It is well settled that the self-employment tax is constitutional, and that petitioner's First Amendment argument has no merit. Helvering v. Davis,301 U.S. 619 (1937); Cain v. United States,211 F.2d 375 (5th Cir. 1954); Henson v. Commissioner,66 T.C. 835↩ (1976).