276 Neb. 733
DAVID V. CHEBATORIS, SPECIAL ADMINISTRATOR OF THE ESTATE OF SHARON L. MOYER, DECEASED, APPELLANT,
v.
JOHN BRADLEY MOYER ET AL., APPELLEES.
No. S-07-892.
Supreme Court of Nebraska.
Filed November 7, 2008.
Timothy J. Buckley, of Adams & Sullivan, P.C., for appellant.
Joseph F. Bachmann and Jeanette Stull, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellees.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

I. INTRODUCTION
David V. Chebatoris, special administrator for the estate of Sharon L. Moyer (Moyer), appeals the decision of the district court for Otoe County, Nebraska. The underlying dispute arose over Moyer's creation of a revocable trust. The special administrator alleged that Moyer had not properly transferred ownership of her real and personal property to the trust and that the property should instead be considered part of the intestate estate. The district court determined that the property had been transferred to the trust by the trust document itself, and granted summary judgment to John Bradley Moyer (Brad) and Daniel Moyer (Dan). We affirm.

II. BACKGROUND
On October 8, 2004, Moyer, the decedent, created a revocable living trust, with Ron Moyer (Ron) as cotrustee. Moyer died intestate November 15. The declaration of trust was filed with the Otoe County register of deeds on December 14. Moyer purported to fund the trust with both real and personal property that she had described in "Appendix `A'" attached to the trust document.
Paragraph 1.3 of the trust document states that "SETTLOR desires to create a trust and is concurrently herewith transferring certain properties to this trust which are set forth on Appendix `A' attached hereto." Paragraph 1.4 states that "TRUSTEE agrees to hold the property described on Appendix `A' together with all investments, reinvestments and additions thereto in trust in accordance with the provisions of this Agreement." Appendix "A" describes three parcels of land, two in Otoe County, Nebraska, and one in Iowa, and lists a variety of personal effects, including bank accounts. The trust instrument also gave detailed instructions as to the distribution of the trust property upon the death of the settlor, Moyer.
The trust document named Moyer's three sons as beneficiaries. Brad was the named beneficiary of the real estate in Nebraska, and Dan was to receive all of the tools, equipment, and machinery included in the trust assets and used in the agricultural operation at the time of Moyer's death, as well as most of the land in Iowa. A third son, Chris Moyer, was to receive a tract of land in Iowa if he could fulfill certain requirements set forth in the trust document. The disposition of the Iowa land is not at issue in this case.
After Moyer's death, the special administrator was appointed to administer Moyer's intestate estate. Meanwhile Ron, acting in accordance with the trust document, sold the land in Otoe County to Brad on September 19, 2005. The deed was filed with the Otoe County register of deeds on November 2. Brad then conveyed the real property to db Ag Land, LLC, and that deed was also filed on November 2. Brad and Dan also took possession of Moyer's personal property.
The special administrator filed a claim in equity on October 5, 2006, alleging that neither the real property nor the personal property described in the trust document had been properly conveyed by the settlor to the trustee and that therefore the trust was wholly unfunded upon Moyer's death. If true, all property mentioned in the trust document would be a part of the intestate estate.
The special administrator requested that the district court impose a constructive trust on defendants and require an accounting for any income received from the property, and also requested that the court quiet title to the real property in Otoe County. The special administrator also asked that the court require Dan and Brad to turn over any of Moyer's personal property in their possession. Defendants cross-claimed, stating that the instrument of trust effectively conveyed the real and personal property to the cotrustees. Defendants moved for summary judgment, and the special administrator did the same.
The district court ultimately sustained defendants' motion for summary judgment, relying on the definition of a deed contained in Neb. Rev. Stat. § 76-203 (Reissue 2003) and the methods for creating a trust under Neb. Rev. Stat. § 30-3827 (Reissue 2003). The court determined that under those statutes, the trust agreement acted as, and was sufficient to constitute, a deed of conveyance. Having determined that the trust instrument properly conveyed both real and personal property, the district court sustained defendants' cross-claim and quieted title in the Otoe County real estate to db Ag Land.

III. ASSIGNMENTS OF ERROR
The special administrator assigns that the district court erred in finding that (1) the "Sharon L. Moyer Revocable Trust" document was sufficient to convey legal title to Moyer's real property to the trustee of the trust and (2) the trust document was sufficient to transfer Moyer's personal property to the trustee of the trust.

IV. STANDARD OF REVIEW
[1] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[1]
[2,3] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[2] When reviewing questions of law, an appellate court resolves the questions of law independently of the trial court's conclusions.[3]

V. ANALYSIS

1. TRANSFER OF REAL PROPERTY TO TRUST
[4] We first turn to the question of whether the Sharon L. Moyer Revocable Trust document was sufficient to convey legal title to Moyer's real property to the trustee of the trust. A conveyance of land may occur in a document that is not formally drafted as a deed.[4] In Matter of Estate of Severson,[5]
the Iowa Supreme Court stated that "[t]he fact that an instrument is not captioned `deed' does not deprive it of legal effect as a conveyance of real estate, provided it is otherwise valid as such a conveyance." The court noted that any writing may be effective as a legal conveyance if it names the grantor and grantee, contains words of grant, describes the land, and is delivered.[6]
Although the transfer of real property would have been best memorialized by a separate document, we nevertheless conclude that Moyer's trust agreement operates as a deed transferring real property. Section 76-203 defines a deed as "every instrument in writing by which any real estate or interest therein is created, aliened, mortgaged or assigned, or by which the title to any real estate may be affected in law or equity." Neb. Rev. Stat. § 76-211 (Reissue 2003) lists the minimal requirements for an instrument to qualify as a deed, including that it be signed by the grantor or grantors, and be acknowledged or proved and recorded.
Moyer's trust document satisfies each of the statutory requirements for a deed of real property. Moyer signed the trust agreement as the settlor of the trust, thus satisfying the requirement of signature by the grantor of the property. Moyer and Ron also signed the agreement as cotrustees, indicating their acceptance of the trusteeship. The agreement was acknowledged by a notary public and was filed with the register of deeds, albeit after Moyer's death.
The trust agreement also purports to affect interests in land, as required by § 76-203, by stating in paragraph 1.3 that "SETTLOR desires to create a trust and is concurrently herewith transferring certain properties to this trust which are set forth on Appendix `A' attached hereto." Although the special administrator contends that this language is insufficient to demonstrate the settlor's present intent to convey the property, we find this argument unpersuasive. The language of the trust document is unambiguous and clearly demonstrates that Moyer desired to transfer her property to the trust.

(a) Equitable Principles Apply
[5-7] We find further support for our conclusion in equity. The duty of this court is to carry out the true intent of the parties.[7] The particular words of a conveyance are unimportant if the intention of the parties can be determined.[8] In construing instruments conveying property, equity concerns itself with the substance and not the form of the transaction, and the particular form or words of a conveyance are unimportant if the intention of the parties can be ascertained.[9] As noted by the trial court, Moyer's intent was clearly to transfer the property listed in Appendix "A" to the trust. We find that no ambiguity exists in the trust document as to Moyer's wishes, and that equitable principles support our determination that the trust document was sufficient to transfer the real property to the trust.

(b) Special Administrator's Objections
The special administrator also contends, however, that the trust document cannot act as a deed for two reasons: (1) because a separate deed is necessary where the settlor is not the sole trustee and (2) because the trust document fails to name a grantee. We find the special administrator's arguments unpersuasive.

(i) Trust Document Fulfills Requirements of Separate Deed
The special administrator acknowledges that it is not necessary to transfer legal title to the trustee when the settlor is the sole trustee, but contends that because Moyer designated a cotrustee, legal title in the real property should have been reregistered in their names as cotrustees. As concluded above, however, the trust document acted as a deed conveying property, and legal title was transferred to the trust in the names of Moyer and Ron, the cotrustees.

(ii) Trust Document Does Not Fail to Name Grantee
[8] The special administrator has also argued that because paragraph 1.3 does not name the trustee as the grantee of the property, the trust fails to convey legal title. However, a court is required to construe a document as a whole and to give effect to each part, if possible.[10] Again, paragraph 1.3 provides that "SETTLOR desires to create a trust and is concurrently herewith transferring certain properties to this trust which are set forth on Appendix `A' attached hereto." Paragraph 2.1 states that "[t]he TRUSTEE of this trust shall be: Appointee: Sharon L. Moyer and Ron Moyer, as Co-Trustees." Clearly, Moyer's intention was to transfer the property listed on Appendix "A" to the trust corpus, with Moyer and Ron serving as cotrustees. As such, a grantee can be discerned. The special administrator's arguments are without merit.

2. TRANSFER OF PERSONAL PROPERTY TO TRUST
The special administrator also argues that the trust document was ineffective as to the transfer of Moyer's personal property. Appendix "A" of the trust agreement lists the property Moyer "concurrently herewith transfer[red]" to the trust, including "[a]ll bank accounts, investments, household goods, personal effects, improvements, fixtures, tools, equipment and machinery, including irrigation wells and equipment, all owned or hereafter acquired by me, and all crops currently growing and to be grown on the above described real estate." As before, the special administrator contends that the transfer was ineffective because Moyer named a cotrustee in the trust agreement. We note that the language of the agreement makes clear the settlor's intent to transfer her personal property to the trust.[11] We therefore conclude that as with the real property, the trust document effectively transferred title to the personal property. While the settlor's intent in this instance is clear, we note, as we did before with regard to the real property, that a separate document may generally be helpful in clarifying a settlor's intent.
We find support for this conclusion in our own case law. In In re Estate of West,[12] we approved the transfer of personal property via a trust document. And in Neneman v. Rickley,[13] a case involving a prenuptial agreement, we approved of the transfer of personal property without requiring a bill of sale or formal deed. Other jurisdictions have similarly focused on a settlor's intent and relaxed the formalities for transferring personal property to a trust.[14]
The special administrator's arguments regarding the transfer of personal property are also without merit.

VI. CONCLUSION
The district court did not err in granting summary judgment for Brad, Dan, and db Ag Land. The trust agreement executed by Moyer fulfills the statutory requirements for a deed in land, and the language is unambiguous. Similarly, the trust document operated to transfer Moyer's personal property to the trust. We therefore affirm the decision of the Otoe County District Court.
AFFIRMED.
NOTES
[1] Hughes v. Omaha Pub. Power Dist., 274 Neb. 13, 735 N.W.2d 793 (2007).
[2] Id.
[3] See Eggers v. Rittscher, 247 Neb. 648, 529 N.W.2d 741 (1995).
[4] See, Jorgensen v. Crandell, 134 Neb. 33, 277 N.W. 785 (1938); Neneman v. Rickley, 110 Neb. 446, 194 N.W. 447 (1923). See, also, Samuel v. King, 186 Or. App. 684, 64 P.3d 1206 (2003); In re Estate of Powell, 83 Cal. App. 4th 1434, 100 Cal. Rptr. 2d 501 (2000); Taliaferro v. Taliaferro, 260 Kan. 573, 921 P.2d 803 (1996); Matter of Estate of Severson, 459 N.W.2d 473 (Iowa 1990).
[5] Matter of Estate of Severson, supra note 4, 459 N.W.2d at 476.
[6] Id.
[7] Mackiewicz v. J.J. & Associates, 245 Neb. 568, 514 N.W.2d 613 (1994).
[8] Koehn v. Koehn, 164 Neb. 169, 81 N.W.2d 900 (1957).
[9] Mackiewicz v. J.J. & Associates, supra note 7.
[10] See In re Trust Created by Cease, 267 Neb. 753, 677 N.W.2d 495 (2004).
[11] See, e.g., In re Estate of West, 252 Neb. 166, 560 N.W.2d 810 (1997).
[12] Id.
[13] Neneman v. Rickley, supra note 4.
[14] See, In re Estate of Washburn, 158 N.C. App. 457, 581 S.E.2d 148 (2003); Samuel v. King, supra note 4. See, also, Restatement (Third) of Trusts § 10 (2003).